**STATE OF VERMONT**

**ENVIRONMENTAL COURT**

Appeals of Rowley       }
                        }
                        }       Docket Nos. 96-6-99 Vtec and
                        }       128-6-02 Vtec
                        }
                        }

**Decision and Order**

Appellants James and Leslie Rowley and Hope Rowley appealed from decisions of the now-Development Review Board (DRB) of the Town of Milton, denying their applications for conditional use approval of a zoning district boundary relocation, and an initial and a revised variance from the septic system setback requirements of the zoning regulations.

Appellants are represented by Marikate E. Kelley, Esq; Interested persons William and Abigail Orr were represented by Richard C. Whittlesey, Esq. but represented themselves as of the hearing and site visit in these matters; the Town of Milton is represented by Gregg H. Wilson, Esq. An evidentiary hearing was held in this matter before Merideth Wright, Environmental Judge, who also took a site visit with the parties. The parties were given the opportunity to submit written requests for findings and memoranda of law. Upon consideration of the evidence, the site visit, and the written memoranda and proposed findings, the Court finds and concludes as follows.

Appellants own approximately 316 acres of property located on the east side of West Milton Road, part of which lies in the Flood Hazard zoning district[1], part of which lies in the Agricultural/Rural Residential (R-5) zoning district, and part of which lies in the General Industrial zoning district. At the time of the original application, part of the property now zoned Agricultural/Rural Residential was zoned > light industrial/commercial= with no road frontage. A portion of the property contains an active sand and gravel pit. A portion of the property, covering approximately 75 acres of the property as a whole, is classified as wetlands, an area of which is located at the base of a steep slope in excess of 45E , and includes a stream. Approximately 116 acres of the property as a whole is located in the 100-year flood plain of the Lamoille River. A portion of the property as a whole is in use as a sand and gravel pit. To the south of the working area of the sand and gravel pit is an area protected as an archeological site. A portion of the property as a whole is in use for agricultural purposes. Three barns or sheds are located on the property, used for agricultural purposes, as a maintenance shop and tool shed, and for storage of fuel trucks in connection with Appellants= fuel oil business. At the time of trial, the income from the sand and gravel operation alone did not pay for the mortgage and taxes on the property as a whole.

The property as a whole is bounded on the southeast by Interstate 89 and on the northwest by West Milton Road. All the frontage on West Milton Road is in the wetlands or the flood plain. A Class 4 town highway known as Munson Hill Road runs along the southerly boundary of the property, between it and the neighboring properties of the Orrs and the Hogabooms. Munson Hill Road is not paved, has not been exactly located on the ground and has not been maintained. It continues southeasterly as a trail running along the southerly boundary of the Rowley property, between it and the neighboring properties of Ross/Anderson and the Longs, to Interstate 89 (but without access to the Interstate). The steep slope down to the stream and wetlands runs roughly parallel to and approximately 50 to 200 feet northerly of Munson Hill Road, forming an approximately two-acre > plateau= of land proposed for residential development in the present appeal. A small portion of the > plateau= is also found in the southeasterly corner of Lot 4, near Interstate 89.

Appellants propose to subdivide the property into four lots: Lot 1 of 232 acres, Lot 2 of 25 acres, Lot 3 of 13.36 acres, and Lot 4 of 45.46 acres including the sand and gravel pit. The approval of the subdivision is not before the Court in this appeal. The two-acre plateau is located on the southerly end of Lots 2 and 3. Approximately 3% of Lot 3 and approximately 68% of Lot 2 is located in the Flood Hazard zoning district. A different configuration of lot lines between Lots 2, 3 and 4 could change the acreage in the two zoning districts allocated to each lot. There is also acreage in the easterly portion of Lot 1 located in the R5 zoning district. No evidence was presented regarding the suitability of any portion of Lot 1 for residential development.

Appellants propose to use the plateau portion of Lots 2 and 3 for a house site on each lot, with the two proposed septic fields to serve both houses being located on the widest portion of the plateau on Lot 3.

Soils in the southerly portion of Lot 4 are suitable for a septic field, which could be located without the need for a variance, although at a greater expense because of the need for a pump station and piping to convey the effluent to the disposal field. If such piping had to cross the wetland, a conditional use determination would have to be obtained from the state wetlands program for such piping.

In order to have enough land in the R5 district to meet the density requirements for the two residential lots[2] (Lots 2 and 3) as proposed in this subdivision, Appellants have applied to relocate[3] the district boundary between the Flood Hazard zoning district and the Agricultural/Rural Residential zoning district one hundred feet into the Flood Hazard district, as provided in ' 660. Such a relocation must meet all five of the conditional use standards found in ' 500.

In order to locate the septic systems where proposed on Lot 3, Appellants are seeking a variance from the requirements of ' 682 of the Zoning Regulations, which requires that:

No septic system shall be closer than two hundred (200) feet from the mean high water mark of any stream . . . . nor shall it be closer than two hundred (200) feet from the edge of a stream bank or gully which has a slope exceeding forty-five (45) degrees.

As proposed, the closest distance from the proposed septic system to the edge of the greater-than-forty-five-degree slope is approximately 72 feet. In addition, the septic system would be located approximately 77 feet from the stream at the bottom of that steep slope.

In order to qualify for the requested variance for the septic system locations, Appellant must meet all five requirements of ' 971 of the Zoning Regulations:

' 971.1 That there are unique physical circumstances or conditions, including irregularity, narrowness, or shallowness of lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property, and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of the Zoning Regulations in the neighborhood or district in which the property is located;

' 971.2 That because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Regulation and that the authorization of a variance is therefore necessary to enable the reasonable USE of the property;

' 971.3 That such unnecessary hardship has not been created by the appellant;

' 971.4 That the variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, substantially or permanently impair the appropriate USE or development of adjacent property, reduce access to RENEWABLE ENERGY RESOURCES, nor be detrimental to the public welfare; and

' 971.5 That the variance, if authorized, will represent the minimum variance that will afford relief and will represent the least deviation possible from the Zoning Regulations and from the Plan.

Appellants= proposal fails to meet at least subsections 1, 2 and 5, and therefore it fails to qualify for a variance.

As the > hardship= for which Appellants request the variance is Appellants= proposal to locate two houses and two septic systems on the two-acre > plateau= near the southerly boundary of the property, this > hardship= is entirely created by the particular configuration of lots proposed by Appellants. It is true that there is steep topography, a stream, and wetlands located between that plateau and the rest of the property, and it is true that the difficulties for development created by these physical features were not created by Appellants. However, the septic systems could be located on Lot 4 without the need for a variance.

Moreover, a reasonable use is being made of the property as a whole, without the residential use of the > plateau= area, even though it is not the most economically advantageous use of the property. In addition, Appellants did not show that there were no other locations on the entire 316-acre parcel, in particular within the easterly portion of the 232-acre Lot 1 in the R5 district, that would be suitable for house sites or septic systems.

Appellants= proposal to relocate the zoning boundary also fails to meet the requirements for conditional use approval. Unlike some types of zoning districts, which designate the intended locations for various types of development or conservation areas within a municipality, and which could be adjusted under this provision, the Flood Hazard district is defined by a physical fact, rather than a goal or intention of a municipal plan. That is, the Flood Hazard district is defined by the boundary of the 100-year floodplain of the Lamoille River, and is intended to discourage development in flood-prone areas. No amount of manipulation of the district boundary on the official zoning map can change the physical fact of the location of the flood plain. Accordingly, moving that boundary to place some of the actual floodplain in the R5 district would necessarily adversely affect the environmental limitations of the area, ' 500.3, as it would thereafter allow more development in a 100-foot-wide strip of the actual floodplain that had formerly been allowed under the Flood Hazard District regulations. The Court cannot determine whether moving the boundary also would adversely affect the Town= s Comprehensive Plan, as the Plan was not submitted to the Court.

Based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellants= application for a variance from ' 682 of the Zoning Regulations is DENIED, and that Appellants= application for conditional use approval to relocate the district boundary between the Flood Hazard zoning district and the Agricultural/Rural Residential zoning district one hundred feet into the Flood Hazard district, as provided in ' 660 of the Zoning Regulations, is DENIED. This decision and order concludes both above-captioned appeals.

Dated at Barre, Vermont, this 27th day of January, 2003.

_____
Merideth Wright
Environmental Judge

---

### Footnotes

[1]  The 100-year flood plain of the Lamoille River identifies the 'Flood Hazard' zoning district.

[2]  None of the parties has addressed whether the residences could be located in this location, or whether two residences could be located anywhere on the property, if the property or some portion of it were designed as a PRD instead of as a conventional subdivision.

[3]  Unlike some municipalities' regulations which provide that the standards for an adjacent district can be applied up to a certain number of feet into an adjacent district, the Milton Zoning Regulations provide for the district boundary itself to be relocated, as a conditional use.